UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:10-CR-167-TAV-HBG-1 |
| JOSHUA TURNER, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's pro se motion for compassionate release [Doc. 191]. The United States has filed a response in opposition [Doc. 202]. Defense counsel[1] has filed a supplement to the pro se motion [Doc. 212], to which the United States has filed a supplemental response [Doc. 221]. The matter is now ripe for adjudication. For the reasons set forth more fully below, defendant's motion will be **DENIED**.

### I. Background

On January 20, 2012, defendant pleaded guilty to one count of Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2, and one count of using, carrying, brandishing, and discharging a firearm during a crime of violence in violation of 17 U.S.C. § 924(c)(1)(A)

---

[1] Federal Defender Services of East Tennessee filed a notice [Doc. 198] indicating that, because of a conflict of interest, it could not assist defendant with his motion for compassionate release as provided by Standing Order 19-04, which was subsequently replaced by Standing Order 21-09. The Court appointed new counsel to assist defendant with his motion for compassionate release pursuant to the Standing Order [Doc. 207].

and 2 [Docs. 39, 67]. Defendant received a sentence of 166 months' imprisonment, followed by four (4) years of supervised release [Doc. 118].

Defendant is housed at FCI Oakdale I, which currently has three (3) active cases of COVID-19 amongst the inmates, twenty (20) active case amongst the staff, and 173 staff and 1,502 inmates have been vaccinated against COVID-19. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 31, 2021). Defendant is thirty (30) years old and his medical records reflect that the suffers from, among other ailments, hypertension [Doc. 206]. In addition, defendant's Presentence Investigation Report ("PSR") indicates that he sustained an injury as a baby which left him with a temporal lobe disorder and related mental health problems [PSR at ¶¶ 60-66]. Defendant also alleges that he suffers from "asthma/bronchitis, upper respiratory sinus," but the medical records before the Court do not support those diagnoses [Docs. 191, 206]. Defendant is scheduled for release on September 12, 2022. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 31, 2021).

## II.     Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A)

2

Case 3:10-cr-00167-TAV-HBG    Document 222    Filed 09/02/21    Page 2 of 9    PageID #: 1179

only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*.

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)]

3

> instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, as no policy statement applies to defendant-filed motions for compassionate release, the second requirement plays no role. *Id.*

### III. Analysis

#### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

4

The government concedes that the exhaustion requirement has been met in this case [Doc. 202]. Thus, the Court may consider the merits of defendant's request.

### B. § 3553(a) factors

As noted above, the Court need not consider all three statutory prerequisites if any one would serve as a basis for denial. *Elias*, 984 F.3d at 519. In this instance, the § 3553(a) factors weigh against compassionate release, so the Court need not address whether defendant has satisfied the extraordinary and compelling reasons prong of the analysis. "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491.

The Court begins with the criminal conduct at issue in this case. Defendant pleaded guilty to one count of Hobbs Act robbery and one count of using, carrying, brandishing,

5

and discharging a firearm during a crime of violence [Doc. 39, ¶ 1]. The plea agreement indicates that defendant and a codefendant broke into the home of a third party, Mr. Dixon, whom defendant knew to be a drug dealer [*Id.* ¶ 4]. Mr. Dixon was not home at the time of the invasion, but Mr. Dixon's mother, Ms. Dixon, and her boyfriend were present [*Id.*]. Defendant stole approximately three (3) grams of cocaine base and $21,000.00 in cash from the house [*Id.*]. Ms. Dixon was shot with a shotgun in her lower back and buttocks by a codefendant [*Id.*]. Defendant admitted that he broke into the home with the intention of robbing Mr. Dixon, and also admitted to dealing cocaine base [*Id.*]. Defendant also admitted to firing a handgun (not the shotgun which injured Ms. Dixon) three times during the home invasion in order to intimidate the residents [*Id.*].

The Court finds that defendant's offense was very serious and although Ms. Dixon appears to have physically recovered from the ordeal, it was nonetheless traumatizing and had a profoundly negative impact on her life [Transcript of Sentencing Hearing, Doc. 136, pp. 6-8]. In addition, Ms. Nixon filed a victim impact statement in opposition to defendant's motion which describes the lasting from trauma from which she still suffers from because of the home invasion [Doc. 202-5]. And while defendant did not personally shoot Ms. Nixon, a codefendant did, and defendant fired his own gun multiple times during the home invasion, evidencing a callous disregard for the safety of others.

Defendant committed the instant offense when he was nineteen years of age. The Court recognizes that defendant was young at the time of the offense, but took that fact into

6

account, as well as his brain injury and resulting complications, when it imposed sentence in this matter [Doc. 136, pp. 25-28].

The Court also recognizes that the instant offense is the only conviction on defendant's adult criminal history [PSR, ¶¶ 45-47]. And while defendant does not have a prior criminal history, he has incurred several disciplinary infractions while serving the instant sentence, including possession of prohibited items, being insolent to staff, being absent from programming/assignments, interfering with taking count, and being in an unauthorized area [Doc. 202-4]. While none of these infractions appear to be violent in nature, they do represent a troubling refusal to abide by the rules, which calls into question whether defendant would abide by his conditions of supervised release if granted compassionate release.

The Court has also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). Further, the Court has considered the kinds of sentences available, the guideline sentencing range, and the need to avoid unwarranted disparities. *Id*.

After considering the above, and all other evidence of record, the Court finds that the § 3553(a) factors weigh against compassionate release. The Court recognizes

7

defendant's efforts to rehabilitate and better himself in prison, but the Court finds that those efforts do not outweigh the other sentencing factors discussed above.

As the Court noted above, defendant was sentenced to a term of imprisonment of 166 months [Doc. 118], and he is due to be released September 12, 2022, approximately 12 months from now. The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this instance, although defendant has served the majority of his sentence, given the serious nature of the offense, and the fact that defendant already received a sentence at the bottom of the guideline range [PSR, ¶ 79], the Court finds that the length of time left on defendant's sentence is another factor which weighs against compassionate release.

The Court is aware of defendant's medical conditions, and the risk that the ongoing pandemic poses to defendant and to others. That risk is somewhat lessened by the fact that the Bureau of Prisons has begun vaccinating inmates against COVID-19, and, as the Court noted above, 1,502 inmates at the facility where defendant is housed have already been vaccinated. The Court in no way diminishes the risk COVID-19 continues to present, but the Court must still balance the § 3553(a) factors against all other relevant evidence.

8

In reaching this decision, the Court has considered the parties' filings, the PSR, the § 3553(a) factors and other relevant law, and the record as a whole.  While the Court notes defendant's medical condition, that is only part of the compassionate release calculus.  On the record before the Court, the sentencing factors weigh against early release, and defendant's motions for compassionate release will be **DENIED**.

## IV. Conclusion

For the reasons set forth more fully above, defendant's motion for compassionate release [Doc. 191] is **DENIED.**

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE